# WOOD & BERLINER PLLC
## ATTORNEYS AT LAW

♦

1320 G STREET, S.E. ♦ WASHINGTON, DC 20003
TELEPHONE: 202.744.9221 ♦ FAX: 202.544.5918 ♦ EMAIL: BMWandDEBLAW@AOL.COM

**RECEIVED DEC 05 2005**
**FILED DEC 16 2005 NANCY MAYER WHITTINGTON, CLERK U.S. DISTRICT COURT**
**RECEIVED DEC 02 2005 Executive Office**

November 28, 2005

*Hand Delivered*

CT Corporation System
1015 15th Street, N.W.
Suite 1000
Washington, DC 20005

RE:   Corrections Corporation of America

Dear Sir/Madam:

Enclosed please find the following: (1) an original summons issued by the Superior Court of the District of Columbia for the defendant in the case of *Nathan Pugh v. Corrections Corporation of America*, (2) a copy of the complaint filed in that case, and (3) a copy of the initial order entered in the case. These documents are being hand delivered to CT Corporation System as DC registered agent for Corrections Corporations of America for the purpose of obtaining service of process upon the defendant under the provisions of DC Superior Court Rule 4(h)(1). We request that you promptly transmit these documents to Corrections Corporation of America.

If you have any questions, please feel free to contact me.

Sincerely,

Brett M. Wood
Counsel for Nathan Pugh

cc:   Mr. John D. Ferguson ✓
      Gus A. Puryear, IV, Esq.
      Mr. F. E. Figueroa

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001   Telephone: 879-1133

05-0007991

Nathan Pugh
*Plaintiff*

VS.

Civil Action No. 

Corrections Corp. of America
*Defendant*
℅ CT Corporation System
1015 15th Street, N.W. Ste. 1000
Washington, D.C. 20005

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W. between 9:00 am and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

Brett M. Wood
Name of Plaintiff's Attorney

Wood & Berliner, PLLC
Address
1320 G Street, S.E.
Washington, D.C. 20003  202.544.4813
Telephone

By _____
   Deputy Clerk

Date: 10/3/2005       OCT 0 3 2005

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-454/Mar. 93

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME*.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

Before the
SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division



Nathan Pugh )
222 20th Street, N.E., No. 4 )
Washington, DC 20002. )
   )
   Plaintiff, )
   )
v. )
   )
Corrections Corporation of America )
% CT Corporation System )
1015 15 th Street, N.W., Ste. 1000 )
Washington, DC 22005. )
   )
   Defendant. )
_____)

05-0007991

## COMPLAINT

COMES NOW the Plaintiff, Nathan Pugh ("Mr. Pugh"), by and through his

undersigned counsel, and for his complaint against the Defendant, Corrections

Corporation of America ("CCA"), hereby states and alleges as follows:

### Introduction

In this action, Mr. Pugh, a correctional officer employed by CCA, seeks an award

of compensatory damages, liquidated damages, pre and post judgment interest, costs and

attorneys' fees against CCA for interfering with and denying his rights under the

provisions of The Family and Medical Leave Act of 1993 ("FMLA" or "Act"), 29 U.S.C.

§§ 2601 et seq., and its implementing regulations, 29 C.F.R. §§ 825.100 et seq., by

willfully refusing to restore him to his employment upon his return from FMLA leave for

the treatment of a serious health condition ("FMLA leave").

## The Parties

1.  At all times relevant hereto, Mr. Pugh was a resident of the District of Columbia. Mr. Pugh continues to be a resident of the District of Columbia, residing at 222 20th Street, N.E., No. 4, Washington, DC 20002.

2.  At all times relevant hereto, Mr. Pugh was employed by CCA as a correctional officer at the Correctional Treatment Facility ("CTF") located at 1901 D Street, S.E., Washington, DC 20003. The CTF is a medium security correctional facility that meets the specialized confinement needs of the District of Columbia Department of Corrections. CTF houses approximately 1,270 male and female inmates, and CCA employs approximately 400 individuals.

3.  CCA is a foreign corporation organized and existing under the laws of the State of Maryland.

4.  CCA is engaged in the business of designing, building, managing and operating prisons, jails and detention facilities in several states.

5.  Since 1997 up to the present time, CCA has operated and managed the CTF under the terms of a contract it entered into with the District of Columbia Government.

6.  At all times relevant hereto, CCA was an "employer" covered by the Act, as that term is defined by pertinent provisions of the FMLA and its implementing regulations, 29 U.S.C. § 2611(4)(A) and 29 C.F.R. § 825.104(b), because it was an entity engaged in commerce and/or an activity affecting commerce that employed fifty (50) or more employees each working day during each of twenty (20) or more calendar

2

workweeks during the then current calendar year or the calendar year preceding the events that resulted in this action.

7. At all times relevant hereto, Mr. Pugh was an "eligible employee" as that term is defined by pertinent provisions of the FMLA and its implementing regulations, 29 U.S.C. § 2611(2)(A) and 29 C.F.R. § 825.800, because, on the date upon which his FMLA leave commenced, Mr. Pugh had been continuously employed by CCA for the twelve (12) previous months and had completed one thousand two hundred and fifty (1,250) hours of service during such twelve (12) month period.

### Jurisdiction

8. This Court has subject matter jurisdiction under pertinent provisions of the FMLA, 29 U.S.C. § 2617(a)(2), which provides that an eligible employee may bring a civil action in a state court of competent jurisdiction against a covered employer for its interfering with, restraining or denying the exercise or attempted exercise of any rights accorded the eligible employee under the FMLA. This Court is a court of competent jurisdiction under section 11-921(a)(6) of the District of Columbia Code, which provides that it has jurisdiction of any civil action at law or in equity brought in the District of Columbia, regardless of the amount in controversy.

9. This Court has personal jurisdiction over the parties under sections 13-423(a)(1) and (2) of the District of Columbia Code because (1) Mr. Pugh is a resident of the District of Columbia, (2) this action arises from CCA's transacting of business in the District of Columbia, and (3) CCA provides services in the District of Columbia pursuant to a contract that it entered into with the District of Columbia Government.

## Facts

10.     Prior to his employment with CCA, Mr. Pugh was employed as a correctional officer by the District of Columbia Department of Corrections ("DOC") for approximately twenty-five (25) years. When CCA assumed the operation and management of the CTF in 1997, Mr. Pugh transitioned from being an employee of the District of Columbia Government to being an employee of CCA. Mr. Pugh, therefore, has over thirty (30) years experience as a District of Columbia correctional officer.

11.     As a result of his military service on behalf of the United States as a U.S. Marine in combat during the Vietnam War, Mr. Pugh suffered from a condition that has been diagnosed as Post Traumatic Stress Disorder ("PTSD").

12.     Mr. Pugh endured this condition during his tenure as a correctional officer for the DOC and later as a correctional officer for CCA.

13.     In 2001, CCA afforded Mr. Pugh medical leave required by the FMLA for in-patient treatment of his condition at the Alliance Veterans Affairs Hospital in New Jersey.

14.     Prior to the commencement of his FMLA leave in 2001 and thereafter, CCA failed to provide Mr. Pugh with the notice required by 29 C.F.R. §§ 825.301(b)(1), (c)(2)(i) and (e), informing him (1) of his right to the restoration of his employment following completion of his FMLA leave, (2) of his obligations and CCA's expectations with respect to such leave and restoration, (3) that, as a condition to the restoration of his employment, he must provide CCA with a fitness for duty certificate, and (4) of the consequences of his failure to provide such a certificate.

15. Upon returning to work after completing his in-patient treatment in 2001, Mr. Pugh did not provide CCA with a fitness for duty certificate.

16. Upon returning to work after completing his in-patient treatment in 2001, CCA restored Mr. Pugh to his position of employment even though Mr. Pugh did not provide CCA with a fitness for duty certificate.

17. On or about June 19, 2003, Mr. Pugh again commenced FMLA leave to enter the Martinsburg Department of Veterans Affairs Medical Center's Post Traumatic Stress Disorder Residential Rehabilitation Program ("PTSD rehabilitation").

18. Prior to the commencement of his FMLA leave in 2003 and thereafter, CCA failed to provide Mr. Pugh with the notice required by 29 C.F.R. §§ 825.301(b)(1), (c)(2)(i) and (e), informing him (1) of his right to the restoration of his employment following completion of his FMLA leave, (2) of his obligations and CCA's expectations with respect to such leave and restoration, (3) that, as a condition to the restoration of his employment, he must provide CCA with a fitness for duty certificate, and (4) of the consequences of his failure to provide such a certificate.

19. At the time Mr. Pugh's FMLA leave commenced in 2003 and thereafter, CCA had no uniformly applied practice or policy that required similarly situated employees to provide fitness for duty certifications as a condition of being restored to their employment upon return from FMLA leave.

20. During Mr. Pugh's PTSD rehabilitation, CCA was informed that he would be completing the PTSD rehabilitation on or about October 1, 2003 and would be returning to work on October 2, 2003.

5

21. On October 1, 2003, Mr. Pugh successfully completed the PTSD rehabilitation program and returned to Washington, DC.

22. Mr. Pugh reported for duty on October 2, 2003 and provided his supervisor with a copy of his medical records from the PTSD rehabilitation program. Mr. Pugh had a right under the FMLA to be restored to his employment at that time.

23. After working a full eight (8) hour shift on October 2, 2003, Mr. Pugh was informed by CCA's Human Resources Coordinator, Ms. Rhonda Williams ("Ms. Williams"), that CCA would not allow him to return to work unless and until he provided CCA with a fitness for duty certification. Mr. Pugh was instructed not to return to work until such time as CCA was provided with such certification.

24. Under 29 C.F.R. § 825.301(f), CCA was proscribed from requiring Mr. Pugh to furnish a fitness for duty certification as a condition of restoring Mr. Pugh to his employment because it had failed to provide him the required notice described in ¶ 18 hereof.

25. CCA denied Mr. Pugh his right under the FMLA to be restored to his employment by refusing to allow him to return to work unless and until he provided CCA with a fitness for duty certification.

26. On or before October 20, 2003, CCA received a fitness for duty certification dated September 30, 2003 from Mr. Pugh's health care provider.

27. Despite its receipt of such fitness for duty certification, CCA persisted in its unlawful refusal to restore Mr. Pugh to his employment.

28. While unlawfully persisting in its refusal to restore Mr. Pugh to his employment, on November 6, 2003, CCA wrote to Mr. Pugh's health care provider

6

asking if Mr. Pugh was able to perform the "essential functions" of his employment as described in CCA's job description for the position of correctional officer.

29. On November 13, 2003, Mr. Pugh's health care provider certified to CCA that Mr. Pugh was able to perform the "essential functions" of his employment as described in CCA's job description for the position of correctional officer.

30. Despite its receipt of such fitness for duty certification, CCA persisted in its unlawful refusal to restore Mr. Pugh to his employment.

31. Despite its receipt of such fitness for duty certification, by letter dated December 23, 2003, CCA unlawfully terminated Mr. Pugh's employment effective January 30, 2004.

32. Despite its receipt of such fitness for duty certification, by letter dated January 30, 2004, CCA again unlawfully terminated Mr. Pugh's employment this time effective February 13, 2004.

33. After months of unlawfully refusing to restore Mr. Pugh to his employment and twice terminating such employment, CCA re-employed Mr. Pugh effective April 12, 2004 to a position other than correctional officer.

33. Due to CCA's persistent and repeated refusals to restore Mr. Pugh to his employment, Mr. Pugh suffered monetary damages as a result of being deprived of employment from October 2, 2003 to April 12, 2004.

34. The acts and conduct by CCA alleged in ¶¶ 18-19, 23-25, 27-28 and 30-33 hereof constitute the unlawful denial of and interference with Mr. Pugh's right under the FMLA, 29 U.S.C. § 2614(a)(1), to be restored to his employment following the completion of his FMLA leave.

7

35. The acts and conduct by CCA alleged in ¶¶ 18-19, 23-25, 27-28 and 30-33 hereof are prohibited by the FMLA, 29 U.S.C. § 2615(a).

36. The acts and conduct by CCA alleged in ¶¶ 18-19, 23-25, 27-28 and 30-33 hereof were willful as they were undertaken by CCA with knowledge of their unlawfulness.

37. As a result of CCA's repeated violations of the FMLA as alleged in ¶¶ 35-37 hereof, Mr. Pugh is entitled under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(i), to the entry of a judgment against CCA awarding him the amount of any wages, employment benefits and other compensation that he lost or was denied, plus liquidated damages, pre and post judgment interest, costs and reasonable attorneys' fees.

### Jury Demand

Mr. Pugh respectfully demands a trial by jury on all issues triable to a jury.

### Prayer for Relief

WHEREFORE, Mr. Pugh demands the entry of a judgment against CCA awarding him the amount of any wages, employment benefits and other compensation that he lost or was denied as a result of CCA's repeated violations of the FMLA, the amount of which shall be more particularly proven at trial herein, liquidated damages, pre and post judgment interest thereon, the costs and reasonable attorneys' fees necessitated by this action, and such further and necessary relief that the Court may deem just and appropriate.

                                                               Respectfully submitted,

                                                                WOOD & BERLINER PLLC

                               Brett M. Wood, Esq.
                               DC Bar No. 142299
                               Deborah F. Berliner, Esq.
                               DC Bar No. 422238
                               1320 G Street, S.E.
                               Washington, DC  20003
                               Tel. 202.744.9221
                               Fax 202.544.5918

                               *Attorneys for Plaintiff*

DATED: This 3rd day of October, 2005



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

NATHAN PUGH
Vs.                                                           C.A. No.      2005 CA 007991 B
CORRECTIONS CORPORATION OF AMERICAN

## INITIAL ORDER

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case is assigned to the judge designated below. All future filings in this case shall bear the name of the judge currently assigned to the case beneath the case number in the caption. Upon the filing of any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued by the judge to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive reading. As to the defendant who has failed to respond, a default will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge as an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge RUSSELL F CANAN
Date:       October 3, 2005
Initial Conference: 9:30 am, Friday, January 06, 2006
Location:  Courtroom 518
           500 Indiana Avenue N.W.
           WASHINGTON, DC 20001

Caio-60.doc