# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Nathan Pugh<br>222 20th Street, N.E., No. 4<br>Washington, DC  20002,<br><br>    Plaintiff,<br><br>    v.<br><br>Corrections Corporation of America<br>c/o CT Corporation System<br>1015 15th Street, N.W., Suite 1000<br>Washington, DC  22005,<br><br>    Defendant. | Civil Action No. 1:05CV02421 (JR) |

## AMENDED COMPLAINT

COMES NOW the Plaintiff, Mr. Nathan Pugh ("Mr. Pugh"), by and through his undersigned counsel, and for his amended complaint against the Defendant, Corrections Corporation of America ("CCA"), hereby states and alleges as follows:

### Introduction

Plaintiff is a correctional officer employed by CCA.  He brings this action against CCA for interfering with, restraining and denying his rights under The Family and Medical Leave Act of 1993 ("FMLA" or "Act"), 29 U.S.C. §§ 2601 *et seq.*, and its implementing regulations, 29 C.F.R. §§ 825.100 *et seq.*  He respectfully requests that this Court award him compensatory and liquidated damages, pre and post judgment interest, costs, attorneys' fees necessitated by this action, and all further and additional relief that the Court deems just and equitable.

RECEIVED

DEC 1 9 2005

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

## The Parties

1. At all times relevant hereto, Mr. Pugh was a resident of the District of Columbia. He continues to reside in the District of Columbia at 222 20th Street, N.E., No. 4, Washington, DC 20002.

2. CCA is a foreign corporation organized and existing under the laws of the State of Maryland.

3. CCA is engaged in the business of designing, building, managing and operating prisons, jails and detention facilities in several states, including the District of Columbia.

4. At all times relevant hereto, Mr. Pugh was employed by CCA as a correctional officer at the Correctional Treatment Facility ("CTF") located at 1901 E Street, S.E., Washington, DC 20003.

5. CTF is a medium security correctional facility that meets the specialized confinement needs of the District of Columbia Department of Corrections ("DOC"). CTF houses approximately seven hundred (700) male and female inmates, and CCA employs approximately four hundred (400) individuals to staff the facility.

6. Since 1997, CCA has operated and managed the CTF under the terms of a contract that it entered into with the District of Columbia Government.

7. At all times relevant hereto, CCA was an "employer" covered by the Act, as that term is defined by pertinent provisions of the FMLA and its implementing regulations. 29 U.S.C. § 2611(4)(A); 29 C.F.R. §§ 825.104 & 825.800. CCA was an entity engaged in commerce or an industry or activity affecting commerce, and it employed fifty (50) or more employees each working day during each of twenty (20) or

more calendar workweeks during the then current calendar year or the calendar year preceding the events that resulted in this action.

8. At all times relevant hereto, Mr. Pugh was an "eligible employee," as that term is defined by pertinent provisions of the FMLA and its implementing regulations. 29 U.S.C. § 2611(2)(A); 29 C.F.R. §§ 825.110 & 825.800. As of the date upon which his FMLA leave commenced, Mr. Pugh had been employed by CCA for the twelve (12) previous months, had completed one thousand two hundred and fifty (1,250) hours of service during that twelve (12) month period, and had worked at a site where fifty (50) or more employees were employed by CCA.

### Jurisdiction and Venue

9. This Court has subject matter jurisdiction under pertinent provisions of the FMLA, 29 U.S.C. § 2617(a)(2), which provides that an eligible employee may bring a civil action in a federal court of competent jurisdiction against a covered employer for its interfering with, restraining or denying the exercise or attempted exercise of any rights accorded the eligible employee under the FMLA. This Court is a court of competent jurisdiction under 28 U.S.C. § 1331, which provides that the Court has original jurisdiction of any civil action arising under the laws of the United States.

10. Venue in this district is proper under 28 U.S.C. § 1391 because the Plaintiff's claims arose in the District of Columbia, and the Defendant does business in the District of Columbia. Further, this case was removed by the Defendant to this Court from the Superior Court of the District of Columbia pursuant to 28 U.S.C. § 1441 by virtue of a Notice of Removal filed December 16, 2005.

## Facts

11. Prior to his employment with CCA, Mr. Pugh was employed by DOC as a correctional officer for approximately twenty-five (25) years. When, in 1997, CCA assumed the operation and management of the CTF from DOC, Mr. Pugh transitioned from being a correctional officer for the District of Columbia Government to being a correctional officer for CCA.

12. As a result of his military service on behalf of the United States as a U.S. Marine in combat during the Vietnam War, Mr. Pugh suffers from a condition that has been diagnosed as Post Traumatic Stress Disorder ("PTSD").

13. For treatment of his condition, on or about June 19, 2003, CCA granted Mr. Pugh FMLA leave to enter the PTSD Residential Rehabilitation Program at the Martinsburg Department of Veterans Affairs Medical Center located in Martinsburg, West Virginia ("PTSD rehabilitation program").

14. Within a reasonable time after being advised of his need for FMLA leave, CCA was required to provide Mr. Pugh with written notice detailing the specific expectations and obligations required of him with respect to such leave, and explaining any consequences of his failure to meet them. 29 C.F.R. §§ 825.301(b)(1) & (c).

15. CCA failed to provide the required notice, and thereby interfered with, restrained and denied Mr. Pugh's rights under the FMLA. 29 C.F.R. § 825.220(b).

16. Within a reasonable time after being advised of his need for FMLA leave, CCA was required to provide Mr. Pugh with written notice informing him that upon his return, he had the right to be restored to the same or an equivalent employment position. 29 C.F.R. §§ 825.301(b)(1)(vii) & (c).

17. CCA failed to provide the required notice, and thus further interfered with, restrained and denied Mr. Pugh's rights under the FMLA. 29 C.F.R. § 825.220(b).

18. Within a reasonable time after being advised of his need for FMLA leave, CCA was required to provide Mr. Pugh with written notice of the terms and conditions under which his group health premium payments were to be made, and the consequences of a failure to timely make such payments. 29 C.F.R. §§ 825.210(d), 825.301(b)(1)(iv).

19. CCA failed to provide the required notice, and thus further interfered with, restrained and denied Mr. Pugh's rights under the FMLA. 29 C.F.R. § 825.220(b).

20. Within a reasonable time after being advised of his need for FMLA leave, CCA was required to provide Mr. Pugh with written notice if he needed a fitness for duty certificate to be restored to his employment. 29 C.F.R. §§ 825.301(b)(1)(v) & (c).

21. CCA failed to provide the required notice, and thus further interfered with, restrained and denied Mr. Pugh's rights under the FMLA. 29 C.F.R. § 825.220(b).

22. When a fitness for duty report is required as a condition to restoration of employment, such a policy or practice must be uniformly applied. 29 C.F.R. § 825.310(a).

23. CCA had no uniformly applied policy or practice requiring similarly situated employees to present fitness reports as a condition to restoration of employment.

24. During Mr. Pugh's FMLA leave, CCA was informed that he would complete the PTSD rehabilitation program on or about October 1, 2003, and would return to work on October 2, 2003.

25. On October 1, 2003, Mr. Pugh successfully completed the PTSD rehabilitation program and was released by his health care provider to return to work.

26. Mr. Pugh returned to work on October 2, 2003 and had the right to be restored to the same or an equivalent employment position at that time. 29 U.S.C. § 2614(a); 29 C.F.R. § 825.214(a).

27. Mr. Pugh also had the right at that time to the full resumption of all his employment benefits in the same manner and at the same levels as when his leave began, including the right to have all accrued benefits made available to him. 29 C.F.R. §§ 825.215(d)(1) & (2).

28. After working a full eight (8) hour shift on October 2, 2003, CCA informed Mr. Pugh that it would not restore his employment unless and until he provided a fitness for duty report, and instructed him not to return to work until then.

29. Because CCA failed to provide written notice that a fitness for duty report was required, and failed also to apply such a policy uniformly, it was prohibited from refusing to restore Mr. Pugh's employment until a fitness report was obtained. 29 C.F.R. §§ 825.310(e) & (f).

30. By refusing to restore Mr. Pugh's employment upon his return from leave, CCA interfered with, restrained and denied his most fundamental right under the FMLA. 29 C.F.R. § 825.220(b).

31. On or before October 20, 2003, CCA received a fitness for duty report from Mr. Pugh's health care provider affirming his ability to return to his employment.

32. Despite receiving this report, CCA still refused to restore Mr. Pugh's employment, in a persistent and continuing pattern of interfering with, restraining and denying his rights under the FMLA. 29 C.F.R. § 825.220(b).

33. Without obtaining Mr. Pugh's permission, on November 6, 2003, CCA wrote a letter to Mr. Pugh's health care provider asking if Mr. Pugh was able to perform the essential functions of his employment as detailed in CCA's job description for his position, which it enclosed with the letter.

34. CCA was required to obtain Mr. Pugh's permission before contacting his health care provider, as well as to conduct such communications through a health care provider that CCA employed. 29 C.F.R. § 310(c).

35. CCA failed to comply with these requirements, further interfering with, restraining and denying Mr. Pugh's rights under the FMLA. 29 C.F.R. § 825.220(b).

36. CCA was also prohibited from delaying the restoration of Mr. Pugh's employment while contact with his health care provider was being made. 29 C.F.R. § 825.310(c).

37. CCA refused to restore Mr. Pugh's employment while such contact was being made, further violating his rights under the FMLA. 29 C.F.R. § 825.220(b).

38. On November 13, 2003, Mr. Pugh's health care provider reported to CCA that Mr. Pugh was able to perform all of the essential functions of his employment as detailed in CCA's job description for the position of correctional officer.

39. Despite receiving this report as well, CCA still refused to restore Mr. Pugh's employment, continuing in its pattern of willfully violating his rights under the FMLA. 29 C.F.R. § 825.220(b).

40. CCA also continued to deprive Mr. Pugh of his right to the resumption of all his employment benefits, including the right to have all accrued benefits made available to him. 29 C.F.R. §§ 825.215(d)(1) & (2).

7

41. By its persistent refusal to restore Mr. Pugh's employment, CCA willfully deprived Mr. Pugh of the funds he needed to pay his bills, and maintain his group health insurance benefits.

42. If Mr. Pugh's group health premium payments were more than thirty (30) days past due, CCA was required to provide him with written notice that his payment had not been received, and also to mail such notice at least fifteen (15) days before the cessation of his benefits. 29 C.F.R. § 825.212(a)(1).

43. By undated correspondence postmarked November 5, 2003, CCA wrote to Mr. Pugh stating that his health care benefits would be cancelled on November 7, 2003 if his premium payment were not received by the close of business on that date.

44. CCA's notice was improper and untimely, further violating Mr. Pugh's rights under the FMLA. 29 C.F.R. § 825.220(b).

45. By correspondence dated November 18, 2003, CCA again wrote to Mr. Pugh stating that his health care benefits would be cancelled on November 28, 2003 if his premium payment were not received by the close of business on that date.

46. CCA's notice was again improper and untimely. 29 C.F.R. § 825.220(b).

47. Despite his being able to perform the essential functions of his job, by letter dated December 23, 2003, CCA terminated Mr. Pugh's employment effective January 30, 2004.

48. In its continuing pattern of abuse, CCA sent a second letter, dated January 30, 2004, again terminating Mr. Pugh's employment, this time effective February 13, 2004.

49. These terminations further violated Mr. Pugh's rights under the FMLA, particularly his right to the restoration of his employment in the same or an equivalent position, which right commenced on October 2, 2003 and continued thereafter, as alleged hereinabove. 29 U.S.C. § 2614(a)(1); 29 C.F.R. §§ 825.214(a) & 825.220(b).

50. CCA's persistent and repeated refusals to restore Mr. Pugh to the same or an equivalent employment position, commencing on October 2, 2003 and continuing thereafter as alleged hereinabove, as well as its other repeated violations of the FMLA and its implementing regulations were unlawful under 29 U.S.C. § 2615(a).

51. The acts and conduct by CCA alleged hereinabove were willful and undertaken with knowledge of their unlawfulness.

52. After months of unlawfully refusing to restore Mr. Pugh to his employment and twice unlawfully terminating such employment, CCA re-employed Mr. Pugh effective April 12, 2004 in a position that is not the same or equivalent to his previous position.

53. Because of CCA's persistent and repeated refusals to restore Mr. Pugh to his employment, and its persistent and repeated violations of the FMLA and its implementing regulations, Mr. Pugh suffered substantial monetary and other damages as a result of being deprived of his employment.

54. As a result of CCA's persistent and repeated violations of the FMLA and its implementing regulations as alleged hereinabove, and its persistent and repeated interference with, restraint and denial of Mr. Pugh's rights under the FMLA, Mr. Pugh is entitled, under 29 U.S.C. § 2617(a)(1)(A)(i), to the entry of a judgment against CCA awarding him the amount of all wages, employment benefits and other compensation that

he lost or was denied, plus liquidated damages, pre and post judgment interest, costs, attorneys' fees necessitated by this action, and all further and additional relief that the Court may deem just and equitable.

### Jury Demand

Mr. Pugh respectfully demands a trial by jury on all issues triable to a jury.

### Prayer for Relief

WHEREFORE, Mr. Pugh demands the entry of a judgment against CCA awarding him the amount of any wages, employment benefits and other compensation that he lost or was denied as a result of CCA's unlawful conduct, the amount of which shall be more particularly proven at trial herein, plus liquidated damages, pre and post judgment interest, costs, attorneys' fees necessitated by this action, and all further and additional relief that the Court may deem just and equitable.

Respectfully submitted,

WOOD & BERLINER PLLC

Brett M. Wood, Esq.
DC Bar No. 142299
Deborah E. Berliner, Esq.
DC Bar No. 422238
1320 G Street, S.E.
Washington, DC  20003
Tel. 202.744.9221
Fax 202.544.5918

*Attorneys for Plaintiff*

DATED: This 19th day of December, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2005, a true and correct copy of the foregoing AMENDED COMPLAINT was served via U.S. first class mail, postage prepaid, upon:

Dannie B. Fogleman, Esq.
Ford & Harrison, LLP
1300 19th Street, NW
Suite 700
Washington, DC  20036

/s/ Deborah E. Berliner
Deborah E. Berliner, Esq.