IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Nathan Pugh, )<br>　　　　Plaintiff, )<br>　　v. )<br>CCA of Tennessee, Inc., )<br>　　　　Defendant. ) | Civil Action No. 1:05CV02421 (JR) |

### SECOND AMENDED COMPLAINT

COMES NOW the Plaintiff, Mr. Nathan Pugh ("Mr. Pugh"), by and through his undersigned counsel, and for his second amended complaint against the Defendant, CCA of Tennessee, Inc. ("CCA"), hereby states and alleges as follows:

### Introduction

CCA operates a medium security correctional facility in the District of Columbia under a contract with the District of Columbia Government. Mr. Pugh is a correctional officer employed by CCA at that facility. Mr. Pugh brings this action against CCA for willfully interfering with, restraining and denying his rights under The Family and Medical Leave Act of 1993 ("FMLA" or "Act"), 29 U.S.C. §§ 2601 *et seq.*, and its implementing regulations, 29 C.F.R. §§ 825.100 *et seq*. He respectfully requests that this Court award him compensatory and liquidated damages, pre and post judgment interest, costs, attorneys' fees incurred in relation to this action, and all further and additional relief that the Court deems just and equitable.

**The Parties**

1. At all times relevant hereto, Mr. Pugh was a resident of the District of Columbia. He continues to reside in the District of Columbia at 222 20th Street, NE, No. 4, Washington, DC 20002.

2. CCA is a corporation organized and existing under the laws of the State of Tennessee.

3. At all times relevant hereto, CCA operated a medium security correctional facility in the District of Columbia under the terms of a contract with the District of Columbia Government. This facility is known as the Correctional Treatment Facility ("CTF").

4. The CTF is located at 1901 E Street, SE, in Washington, DC. The facility meets the specialized confinement needs of the District of Columbia Department of Corrections ("DOC"), and houses approximately seven hundred (700) male and female inmates. CCA employs approximately four hundred (400) individuals to staff the facility.

5. At all times relevant hereto, Mr. Pugh was employed by CCA as a correctional officer at the CTF facility.

6. At all times relevant hereto, CCA was an "employer" covered by the Act, as that term is defined by pertinent provisions of the FMLA and its implementing regulations. 29 U.S.C. § 2611(4)(A); 29 C.F.R. §§ 825.104 & 825.800. CCA was an entity engaged in commerce or an industry or activity affecting commerce, and it employed fifty (50) or more employees each working day during each of twenty (20) or more calendar workweeks during the then current calendar year or the calendar year preceding the events that resulted in this action.

7. At all times relevant hereto, Mr. Pugh was an "eligible employee," as that term is defined by pertinent provisions of the FMLA and its implementing regulations. 29 U.S.C. § 2611(2)(A); 29 C.F.R. §§ 825.110 & 825.800. As of the date upon which his FMLA leave commenced, Mr. Pugh had been employed by CCA for the twelve (12) previous months, had completed one thousand two hundred and fifty (1,250) hours of service during that twelve (12) month period, and had worked at a site where fifty (50) or more employees were employed by CCA.

## Jurisdiction and Venue

8. This Court has subject matter jurisdiction under pertinent provisions of the FMLA, 29 U.S.C. § 2617(a)(2), which provides that an eligible employee may bring a civil action in a federal court of competent jurisdiction against a covered employer for its interfering with, restraining or denying the exercise or attempted exercise of any rights accorded the eligible employee under the FMLA. This Court is a court of competent jurisdiction under 28 U.S.C. § 1331, which provides that the Court has original jurisdiction of any civil action arising under the laws of the United States.

9. Venue in this district is proper under 28 U.S.C. § 1391 because the Plaintiff's claims arose in the District of Columbia, and the Defendant does business in the District of Columbia. Further, pursuant to 28 U.S.C. § 1441, this case was removed by the Defendant to this Court from the Superior Court of the District of Columbia by virtue of a Notice of Removal filed December 16, 2005.

## Facts

10. Prior to his employment with CCA, Mr. Pugh was employed by the DOC as a correctional officer for approximately twenty (20) years.

11. When CCA assumed operation and management of the CTF, Mr. Pugh transitioned from being a correctional officer for the District of Columbia Government to being a correctional officer for CCA.

12. As a result of his military service in combat as a U.S. Marine during the Vietnam War, Mr. Pugh suffers from a condition that has been diagnosed as Post Traumatic Stress Disorder ("PTSD").

13. In 2001, CCA granted Mr. Pugh leave for in-patient treatment of his condition at the Veterans Affairs ("VA") Medical Center PTSD Program in Lyons, New Jersey.

14. Upon his return to work following his in-patient treatment in 2001, CCA restored Mr. Pugh to his employment without requiring a fitness for duty certificate from his health care provider.

15. On or about June 24, 2003, CCA granted Mr. Pugh FMLA leave to enter the PTSD Residential Rehabilitation Program at the VA Medical Center in Martinsburg, West Virginia ("PTSD rehabilitation program") for further treatment of his condition.

16. Within a reasonable time after being notified of Mr. Pugh's need for FMLA leave, CCA was required to provide him with written notice detailing the specific expectations and obligations required of him with respect to such leave, and explaining any consequences of his failure to meet such obligations. 29 C.F.R. §§ 825.301(b)(1) & (c).

17. CCA failed to provide this required notice, and its failure to do so interfered with, restrained and denied Mr. Pugh's rights under the FMLA. 29 C.F.R. § 825.220(b).

18. Within a reasonable time after being notified of Mr. Pugh's need for FMLA leave, CCA also was required to provide him with written notice of any

4

requirement that he present a fitness for duty certificate in order to be restored to his employment. 29 C.F.R. §§ 825.301(b)(1)(v) & (c).

19. CCA failed to provide this required notice as well, further interfering with, restraining and denying Mr. Pugh's rights under the FMLA. 29 C.F.R. § 825.220(b).

20. When a fitness for duty certificate is required in order to be restored to employment, such a policy or practice must be uniformly applied by the employer. 29 C.F.R. § 825.310(a).

21. CCA had no uniformly applied policy or practice requiring all similarly situated employees to present fitness for duty certificates in order to be restored to employment.

22. When he requested FMLA leave, Mr. Pugh notified CCA that he would return to work on October 2, 2003.

23. On October 1, 2003, Mr. Pugh successfully completed the PTSD rehabilitation program and was released by his health care provider to return to work.

24. Mr. Pugh returned to work on October 2, 2003 and had the right at that time to be restored to his position as a correctional officer or to an equivalent position with equivalent pay, benefits and working conditions, including privileges, perquisites and status. 29 U.S.C. § 2614(a); 29 C.F.R. § 825.214(a).

25. Mr. Pugh also had the right at that time to the full resumption of all his employment benefits in the same manner and at the same levels as when his FMLA leave began, including the right to have all accrued benefits (paid vacation, sick and personal leave) made available to him. 29 C.F.R. §§ 825.215(d)(1) & (2).

26. Because CCA failed to notify Mr. Pugh that a fitness for duty certificate was required in order to be restored to employment, and failed to apply any such policy

uniformly, Mr. Pugh had no knowledge of the requirement and did not provide the certification upon his return to work.

27. After Mr. Pugh worked a full eight (8) hour shift upon his return to work on October 2, 2003, CCA informed him that because he had not provided a fitness for duty certificate, it would not restore his employment.

28. CCA instructed Mr. Pugh not to return to work unless and until he provided a fitness for duty certificate.

29. Because CCA failed to notify Mr. Pugh that a fitness for duty certificate was required in order to be restored to employment, CCA was prohibited from refusing to restore Mr. Pugh's employment until a fitness for duty certificate was obtained. 29 C.F.R. §§ 825.310(e) & (f).

30. By refusing to restore Mr. Pugh's employment upon his return from FMLA leave, CCA interfered with, restrained and denied his most fundamental right under the FMLA. 29 C.F.R. § 825.220(b).

31. On or before October 20, 2003, CCA received a letter from Mr. Pugh's health care provider affirming Mr. Pugh's ability to return to his employment as a correctional officer.

32. Despite obtaining this information, CCA persisted in its refusal to restore Mr. Pugh's employment, further interfering with, restraining and denying his rights under the FMLA. 29 C.F.R. §§ 825.220(b) & 825.310(c).

33. On November 6, 2003, more than a month after Mr. Pugh's return from FMLA leave, CCA wrote a letter to Mr. Pugh's health care provider asking if Mr. Pugh was able to perform the essential functions of his employment as detailed in CCA's job

description for the position of correctional officer, a copy of which it enclosed with the letter.

34. CCA was required to restore Mr. Pugh's employment while such contact with his health care provider was being made.  29 C.F.R. § 825.310(c).

35. CCA refused to restore Mr. Pugh's employment while such contact was being made, further interfering with, restraining and denying his rights under the FMLA.  29 C.F.R. § 825.220(b).

36. On or about November 13, 2003, Mr. Pugh provided CCA with a report from his health care provider certifying that he was able to perform the essential functions of his employment as detailed in CCA's job description for the position of correctional officer.

37. Despite receiving this certification, CCA persisted in its refusal to restore Mr. Pugh's employment, further violating his rights under the FMLA.  29 U.S.C. § 2614(a)(1); 29 C.F.R. §§ 825.214(a) & 825.220(b).

38. Rather than restore Mr. Pugh's employment as required, CCA instead informed Mr. Pugh on November 21, 2003 that his employment would be terminated effective December 5, 2003.

39. CCA terminated Mr. Pugh's employment effective December 5, 2003, further violating his rights under the FMLA.  29 U.S.C. § 2614(a)(1); 29 C.F.R. §§ 825.214(a) & 825.220(b).

40. On or about November 30, 2003, in anticipation of the termination of his employment effective December 5, 2003, Mr. Pugh filed a claim for unemployment compensation benefits under the provisions of the District of Columbia Unemployment Compensation Act.  CCA was duly notified of Mr. Pugh's claim.

41. The Office of Unemployment Compensation of the District of Columbia Department of Employment Services thereafter determined, without objection from CCA, that Mr. Pugh was unemployed and eligible to receive unemployment compensation benefits commencing on December 7, 2003.

42. Thereafter, Mr. Pugh continuously received unemployment compensation benefits through the week of April 10, 2004.

43. By its persistent refusal to restore Mr. Pugh's employment, CCA willfully deprived Mr. Pugh of the funds he needed to pay for his basic living expenses and group health insurance benefits.

44. If Mr. Pugh's group health insurance premium payments were past due, CCA was required to provide him with written notice that his payment had not been received, and to mail such notice to him at least fifteen (15) days before the cessation of his benefits. 29 C.F.R. § 825.212(a)(1).

45. By undated correspondence postmarked November 5, 2003, CCA wrote to Mr. Pugh stating that his group health insurance benefits would be cancelled on November 7, 2003 if his premium payment were not received by the close of business on that date.

46. CCA's notice was improper and untimely, and further violated Mr. Pugh's rights under the FMLA. 29 C.F.R. § 825.220(b).

47. By correspondence dated November 18, 2003, CCA again wrote to Mr. Pugh stating that his group health insurance benefits would be cancelled on November 28, 2003 if his premium payment were not received by the close of business on that date.

48. Again CCA's notice was improper and untimely, and again CCA violated Mr. Pugh's rights under the FMLA. 29 C.F.R. § 825.220(b).

49. Continuing its repeated violations of Mr. Pugh's rights under the FMLA, CCA sent Mr. Pugh two more letters terminating his employment.

50. These actions further violated Mr. Pugh's rights under the FMLA, particularly his right to be restored to his employment in the same or an equivalent position, which right commenced on October 2, 2003 and continued thereafter, as alleged hereinabove. 29 U.S.C. § 2614(a)(1); 29 C.F.R. §§ 825.214(a) & 825.220(b).

51. CCA's persistent and repeated refusals to restore Mr. Pugh to the same or an equivalent employment position, commencing on October 2, 2003 and continuing thereafter as alleged hereinabove, as well as its other violations of the FMLA and its implementing regulations were unlawful under 29 U.S.C. § 2615(a)(1).

52. The acts and conduct by CCA alleged hereinabove were willful and undertaken with knowledge of their unlawfulness.

53. After months of unlawfully refusing to restore Mr. Pugh to his employment and unlawfully terminating such employment on at least three occasions, CCA re-employed Mr. Pugh effective April 12, 2004 in the position of a commissary clerk, a position that is not the same as or equivalent to his previous position.

54. Because of CCA's repeated and numerous violations of the FMLA and its implementing regulations as alleged hereinabove, Mr. Pugh suffered substantial monetary and other damages as a result of CCA's treatment and being deprived of his employment.

55. As a result of CCA's repeated and numerous violations of the FMLA and its implementing regulations as alleged hereinabove, and its interference with, restraint and denial of Mr. Pugh's rights under the FMLA on numerous occasions, Mr. Pugh is entitled, under 29 U.S.C. § 2617(a)(1)(A)(i), to the entry of a judgment against CCA awarding him the amount of all wages, employment benefits and other compensation that

he lost or was denied, plus liquidated damages, pre and post judgment interest, costs, attorneys' fees incurred in relation to this action, and all further and additional relief that the Court deems just and equitable.

### Jury Demand

Mr. Pugh respectfully demands a trial by jury on all issues triable to a jury.

### Prayer for Relief

WHEREFORE, Mr. Pugh demands the entry of a judgment against CCA awarding him the amount of all wages, employment benefits and other compensation that he lost or was denied as a result of CCA's unlawful conduct, the amount of which shall be more particularly proven at trial herein, plus liquidated damages, pre and post judgment interest, costs, attorneys' fees incurred in relation to this action, and all further and additional relief that the Court deems just and equitable.

Respectfully submitted,

WOOD & BERLINER PLLC

_____/s/_____
Brett M. Wood, Esq.
DC Bar No. 142299
Deborah E. Berliner, Esq.
DC Bar No. 422238
1320 G Street, S.E.
Washington, DC   20003
Tel. 202.744.9221
Fax 202.544.5918

*Attorneys for Plaintiff*

DATED:  This 16th day of February, 2006