IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Nathan Pugh, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:05CV02421 (JR) |
| CCA of Tennessee, Inc., | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM SHOWING CAUSE
WHY HE SHOULD NOT BE REQUIRED TO PARTICIPATE IN MEDIATION**

Pursuant to this Court's Order to Show Cause entered March 14, 2006 ("Order") and Rule 84 of the Rules of the United States District Court for the District of Columbia ("Local Rules"), Plaintiff Nathan Pugh ("Mr. Pugh"), by and through undersigned counsel, hereby respectfully submits this memorandum showing cause why he should not be required to participate in mediation of this case.

**I.     Introduction.**

Defendant CCA of Tennessee, Inc. ("CCA") operates a medium security correctional facility in the District of Columbia under a contract with the District of Columbia Government. Second Amended Complaint ("Complaint") at ¶ 3. Mr. Pugh worked many years at the facility as a Correctional Officer for the District of Columbia Department of Corrections, and transitioned to employment with CCA when it took over the operation of the facility in 1997. *Id.* at ¶ 5.

On October 3, 2005, Mr. Pugh filed this action against CCA for willfully interfering with, restraining and denying his rights under The Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* ("FMLA" or "Act"), and its implementing regulations, 29 C.F.R. §§ 825.100 *et seq*. ("the regulations"). In his Complaint, Mr. Pugh alleges numerous and repeated violations of the FMLA and the regulations by CCA. *See, e.g.,* Complaint at ¶¶ 17, 19, 21, 29, 30, 32, 34, 35, 37, 39, 46 & 48. After several unsuccessful attempts by Mr. Pugh to resolve this matter with CCA ─ including mediation in 2004 ─ he was forced to file this lawsuit. He seeks the entry of a judgment against CCA awarding him the amount of all wages, employment benefits and other compensation that he lost or was denied, plus liquidated damages, pre and post judgment interest, costs and attorneys' fees incurred in relation to this action.

CCA filed its answer to Mr. Pugh's Complaint on February 21, 2006. An initial scheduling conference was held in Chambers on February 7, 2006, and the Court issued its Scheduling Order on February 10, 2006. Pursuant to the Scheduling Order, the parties must complete discovery by June 30, 2006, and file any dispositive motions by July 17, 2006. Scheduling Order at 1. At this time, the parties have served their Initial Disclosures in this case, and Plaintiff has begun discovery, having served two requests to date on CCA.

Without conferring under Local Rule 7(m), on March 13, 2006, CCA filed a *Motion For Issuance Of Order Requiring Plaintiff To Show Cause Why The Court Should Not Require Mediation In This Case* ("Motion"). In its Motion, CCA also asked the Court to stay discovery "pending Plaintiff's response to the motion to show cause order and the Court's action based on Plaintiff's response." Motion at 3. The following day,

on March 14, 2006, the Court granted Defendant's Motion. Counsel for the Plaintiff contacted Chambers to clarify whether the Court had also stayed discovery in the case and was advised that it had not. The Court stated that it was taking the matter under advisement, and asked Plaintiff to address the issue in its response to the Court's Order. Counsel for Plaintiff communicated to counsel for CCA the Court's clarification regarding discovery, and Plaintiff addresses the matter herein as requested by the Court.

II.     **Discussion.**

As shown below, there is a long history of unsuccessful attempts by Plaintiff to resolve this dispute with CCA, including prior mediation. Throughout, CCA has shown itself to be unconcerned and unwilling to address the Plaintiff's claims in good faith. Now, it seeks to "require" Mr. Pugh to mediate his claims, not because mediation is appropriate in this case or likely to be successful, for CCA fails to posit even one reason indicating that it is or is likely to be. But rather because CCA seeks to avoid having to respond to Plaintiff's discovery requests and, if Plaintiff is successful in adjudicating his claims, pay for his attorneys' fees. In truth, mediation is simply CCA's latest attempt to avoid its responsibility in this matter, and the Court should, respectfully, reject the idea and keep this litigation on schedule.

    A.     **The Parties Have Already Tried Mediation.**

Prior to filing this lawsuit, Plaintiff tried on several occasions to resolve this matter with CCA. When all of his efforts to satisfy CCA failed, he pursued an administrative proceeding before the D.C. Office of Human Rights. That proceeding included mediation between the parties in an attempt to settle their dispute. It turned out to be a complete waste of time.

CCA's purported desire to resolve Mr. Pugh's claims through mediation must be considered against the backdrop of its utter disregard for its obligations under the FMLA, and its downright callous treatment of a capable long-term employee. When Mr. Pugh returned from FMLA leave, he expected ─ and the FMLA required ─ that his job would be restored. *See* Complaint at ¶ 24. Instead, in the face of repeated written statements by his physicians that Mr. Pugh was fit to undertake his duties, CCA for months conjured up one excuse after another for refusing to restore his employment.

When he first reported for duty upon his return from leave, Mr. Pugh gave CCA medical records indicating that he was fit to return to work. That was not good enough, so Mr. Pugh took a train back to West Virginia to obtain a fitness for duty letter from his doctor as quickly as possible. That was not good enough either, so Mr. Pugh took a second train back to West Virginia to obtain a medical certification that he was able to perform the "essential functions" of his job. Not good enough still, so Mr. Pugh obtained yet another doctor's letter stating that he was able to return to work. Again, not good enough. Finally, and perhaps mercifully, CCA fired Mr. Pugh, not once, but three times, just for good measure. Then, after Mr. Pugh began receiving unemployment benefits, CCA claimed that he had not really been terminated at all.

It was not until Mr. Pugh filed a complaint before the D.C. Office of Human Rights and retained counsel that CCA decided, more than six months after he first reported for duty, to let him come back to work (albeit in a difference position). During the administrative proceeding, Mr. Pugh's claim for back pay was mediated, but CCA would not resolve the matter. Mr. Pugh offered to forego further legal action and accept

4

$15,000 in damages, but CCA rejected the settlement offer outright, and refused to negotiate.

Now, CCA wants to submit Mr. Pugh's claims to mediation again, and have the Court stay discovery presumably until the mediation process runs its course. CCA indicates that it is concerned that the costs of litigation will be high and that, should Mr. Pugh prevail at trial, it will be whacked with a substantial attorneys' fees award. However, these considerations should not constitute valid reasons for ordering the parties to engage in mediation. *See infra*, Section B. Given CCA's conduct leading up to this litigation, and that the parties unsuccessfully tried mediation once before, Mr. Pugh has no confidence that anything can be gained by going through that exercise again.

CCA does not need the involvement of a mediator to engage in bona fide settlement discussions, if that is what it really seeks. In that regard, it is noteworthy that CCA's only response to Mr. Pugh's recent invitation to discuss settlement was its motion for an order to show cause. To Mr. Pugh, that fact is more indicative of a desire to impede the progress of his case than a bona fide willingness this time seriously to attempt to resolve his claims through mediation.

### B.    **Mediation Is Not Appropriate In This Case.**

As the Local Rules recognize, "Mediation, while not appropriate in all cases, can benefit many litigants." Local Rules, Appendix A, at 116. Perhaps the best indication that mediation is not appropriate in this case is that it has already been tried once and failed. A brief review of the additional considerations provided in the Local Rules also indicates that mediation is not appropriate in this case, would not lead to a satisfying resolution, and is unlikely to benefit the litigants in any real way.

Appendix A to the Local Rules for civil cases, entitled *Dispute Resolution Programs*, lists nine (9) considerations that are germaine to a determination of whether mediation is appropriate in a particular case. Local Rules, Appendix A, at 126. The first consideration is whether the parties have an "ongoing relationship" that would provide an incentive to avoid the problems ongoing litigation might engender. *Id.* at 127. While Mr. Pugh has been employed by CCA for almost nine (9) years, he is just one of several hundred employees working at one of the many correctional facilities that CCA operates throughout the country. In fact, since CCA took over operation of the DC correctional facility in 1997, it has gone through eight wardens and twelve assistant wardens, so it is doubtful that there exists an "ongoing relationship" in the first place. Besides, there is little else that CCA can do to Mr. Pugh that it has not already tried. Fortunately, the FMLA statutorily protects Mr. Pugh from retaliation by CCA for pursuing this litigation. Thus, as long as Mr. Pugh performs his job duties, his "ongoing relationship" with CCA should not be affected by this litigation.

The second consideration is whether the lawyers involved in the case are receptive to the mediation process. *Id.* at 128. While Plaintiff's counsel is by no means opposed to mediation in general, they are extremely pessimistic that it would be worthwhile in this case. This pessimism stems in part from the fact that Mr. Pugh's dispute with CCA has already been submitted to mediation once without success. CCA has given Mr. Pugh absolutely no reason to believe that it now seeks in good faith to resolve this matter, or that the result would be any different than before. Indeed, CCA's Motion appears to be motivated more by a desire to avoid discovery and attorneys' fees than a bona fide desire to settle Mr. Pugh's claims. Plaintiff's counsel believes that

6

mediation would be a waste of time in this case, and that the best way to proceed is for the case to stay on track and on schedule.

The third consideration is whether a mediator can help the parties identify and exchange information. *Id.* Given that the parties are presently in the discovery phase of this case, which is designed precisely to accomplish just that, Plaintiff sees no need to involve a mediator for that purpose.

The fourth consideration is whether a judicial remedy is adequate. If not, mediation may be appropriate. *Id.* In this case, Plaintiff seeks the statutorily prescribed remedy — a money judgment. Since that remedy is, as a matter of law, adequate, there is no need to involve a mediator for that purpose either.

The fifth consideration is whether the parties have widely divergent views regarding the value of the case, and would benefit from a neutral evaluation by a mediator. *Id.* Congress has prescribed the amount of damages that Plaintiffs may recover in cases such as this: back pay and liquidated damages plus interest. The damages in, or value of, this case is therefore fixed by statute, and the parties do not need to involve a mediator to value the case for them.

Similarly, none of the remaining four considerations are pertinent in this case, *i.e.*, a need to establish a legal precedent, a need to avoid a public airing of the dispute, difficulty in fashioning a judicial remedy, and a need for a mechanism to help resolve future disputes that may flow from this lawsuit. *Id.* As such, none of the considerations listed in the Local Rules indicate that mediation would be appropriate in this case. When added to the long history of unsuccessful attempts by Plaintiff to resolve this dispute with CCA, and a prior unsuccessful attempt at mediation, one can only conclude that

mediation is not appropriate in this case, and would lead only to further delays and additional costs, not less.

### C.    Defendant's One Assertion In Support Of Mediation Is Nonsensical.

Nor does CCA posit in its Motion any valid reason why mediation would be appropriate in this case. Indeed, the one statement that CCA makes in its Motion regarding the appropriateness of mediation is inaccurate and nonsensical: "Mediation is appropriate at this stage because, since the claimed attorneys' fees already are more than triple the amount in dispute, additional attorneys' fees will only further impair the ability of the parties and the Court to resolve this case at a later date." Motion at 2. As shown below, this statement not only misrepresents the facts in this case, it makes no sense.

Pursuant to Rule 26(a)(1)(C) of the Federal Rules of Civil Procedure, Plaintiff is required to provide Defendant with "a computation of . . . damages claimed" in its Initial Disclosures. Accordingly, Plaintiff provided a damage computation in his Initial Disclosures to CCA on February 22, 2006. That computation estimates that Plaintiff's damages in this case will total $42,681.60, plus interest calculated at the prevailing rate, and the restoration of Mr. Pugh's employment benefits or an amount equivalent thereto.

Pursuant to the Court's Scheduling Order, Plaintiff also included in his Initial Disclosures the accumulated dollar amount of his attorneys' fees and expenses related to this case, which totaled $59,125.17. *See* Scheduling Order at 2. As one can readily see, the claimed attorneys' fees are nowhere near triple the amount in dispute. CCA's representation to the Court is plainly erroneous. Motion at 2. Furthermore, CCA's second comment, that additional attorneys' fees will only further impair the possible resolution of this case at a later date, is nonsensical. It is precisely the prospect of

additional costs and expenses that generally induce the parties to a lawsuit to resolve their differences.

CCA's concern over the amount of Plaintiff's attorneys' fees does not, standing alone, justify ordering mediation. It is readily apparent that Congress granted individuals in Mr. Pugh's position access to the federal and state courts for, *inter alia*, at least two reasons: First, because private lawsuits serve as an effective mechanism for enforcing important federal rights accorded employees by the FMLA, and second, so that employees could obtain redress for their employer's deprivation of those rights. However, Congress capped an employee's potential recovery to economic loss (usually measured by back pay) plus, under certain circumstances, liquidated damages in an amount equal to back pay. This limitation on damages results in the amount at stake in a particular case not being very much.

This aspect of the FMLA's remedial scheme creates a disincentive for employees to bring lawsuits because the high cost of litigation would easily swallow the potential FMLA recovery. Why would any aggrieved employee with limited resources bother suing to enforce his rights under the FMLA if the amount of the potential recovery is less than the cost of litigation? Of course, this query assumes that the employee has the disposable income to fund the litigation in the first place. Usually, however, they do not. Then, the question becomes: What lawyer is going to represent an aggrieved employee in an FMLA case when there is no possibility of being compensated for his services, even if his client prevails? The FMLA avoids this incongruity by providing that if an employee vindicates his rights under the FMLA through litigation, he must be awarded his costs and attorneys' fees. Notably, because the value of an employee's rights under

9

the FMLA is not measured in dollars, this mandate is not conditioned on the potential size of the damage award.

The requirement in the FMLA's remedial scheme that a prevailing employee be awarded costs and attorneys' fees levels the financial playing field so that deep-pocketed employers cannot, by sheer economic firepower, reduce the rights accorded employees by the FMLA to mere verbiage. Typically, this makes employers such as CCA squirm. They like the idea of being able to wage a war of financial attrition against assertive employees who live from paycheck to paycheck. They like the idea of being able to escape accountability for their transgressions because their employees do not have the money to enforce their rights. They do not like the thought of having to pay their employee's attorneys as much as they pay their own high-priced lawyers when they get caught infringing upon their employees' rights. Be that as it may, there is nothing in the FMLA's remedial provisions remotely suggesting that if the cost of litigation is high, an employee's claims should be mediated.

Thus, even assuming, *arguendo*, that CCA's statement is correct, this statement, standing alone, does not embody a rationale for forcing mediation, it merely describes an incentive ─ present in virtually every case ─ for the parties to attempt settlement. No reason is offered as to why the involvement of a mediator is needed, how it would enhance the prospects for settlement, or why the parties are not capable of discussing settlement on their own. As such, CCA's rationale is unpersuasive and should, respectfully, be rejected by the Court.

### D.   Discovery In This Case Should Proceed On Schedule.

According to the Local Rules "[p]articipation in the District Court's Mediation Program is voluntary."  Local Rules, Appendix A, at 127.  It "involves one or more sessions in which counsel, litigants and the mediator participate, and may continue over a period of time.  *The mediator has no power to render a decision or dictate a settlement*."  *Id.* at 126 (emphasis in original).  As such, mediation is by no means cost free.  In fact, it commands several thousand dollars worth of time, significant amounts of which must be devoted to the preparation of a mediation statement, preparation for the mediation sessions, and participation in the sessions themselves, with the distinct possibility that no resolution will be attained.  *See id.* at 130.

Furthermore, the Court has prescribed a relatively tight litigation schedule for the adjudication of this case.  Trial is set to commence in less than six months, and there is a lot to be done in that time.  CCA is not simply requesting that Mr. Pugh be forced to mediate, but also that discovery in this case be stayed while mediation is in progress, a step that, for very good reasons, is frowned upon by the mediation rules.  ("Unless the presiding judge indicates otherwise, referral of a case to mediation *does not stay* other proceedings in the case or alter applicable litigation deadlines."  *See id.* (emphasis in original)).

There may be some legitimate justification for staying discovery, but CCA does not say what it is.  Thus, the only conclusion one can draw is that CCA just does not want to bother responding to Mr. Pugh's outstanding discovery requests.  Whatever its reason, adding a costly, time consuming and, in all likelihood, futile proceeding to the process the Court has prescribed would needlessly prejudice the orderly preparation of Mr.

Pugh's case. This prejudice would be exponentially compounded were the Court also to stay discovery, particularly since it is not apparent that mediation would materially advance a resolution of this case.

### III.     Conclusion.

For all of the foregoing reasons, Plaintiff respectfully requests that it not be required to participate in another attempt at mediation of this case, that discovery continue in accordance with the Court's Scheduling Order, that all applicable litigation deadlines remain in place, and that this case proceed on schedule.

>Respectfully submitted,
>
>WOOD & BERLINER PLLC
>
>\_\_\_\_\_/s/_____
>Brett M. Wood, Esq.
>DC Bar No. 142299
>Deborah E. Berliner, Esq.
>DC Bar No. 422238
>1320 G Street, S.E.
>Washington, DC  20003
>Tel.  202.744.9221
>Fax  202.544.5918
>
>*Attorneys for Plaintiff*

DATED:  This 27th day of March, 2006

12