# EXHIBIT C

GOVERNMENT OF THE DISTRICT OF COLUMBIA
Office of Human Rights



**Judiciary Square Office**
441 4th Street, NW Suite 570N
Washington, DC 20001
Phone: (202) 727-4559 • Fax:(202) 727-9589

Kenneth L. Saunders
Director

**Penn Branch Office**
3220 Pennsylvania Avenue, SE, 1st Fl.
Washington, DC 20020
Phone: (202) 727-4559 • Fax:(202) 645-6390

# LETTER OF DETERMINATION

March 4, 2005

Ms. Deborah E. Berliner, Esq.
c/o Nathan Pugh
1255 New Hampshire Avenue, N.W. Suite 511
Washington, D.C. 20036

> RE: *Nathan Pugh vs. Corrections Corporation of America*
> Docket No.: 04-156-P(CN)
> EEOC No.: 10CA400138

Dear Mr. Pugh:

The Office of Human Rights (hereinafter "the OHR") has completed its investigation of the above-referenced complaint. You are referred to as "**COMPLAINANT**." The Corrections Corporation of America is referred to as "**RESPONDENT**."

## ISSUES PRESENTED

1) Whether Respondent subjected Complainant to disparate treatment on the bases of his disability (Post Traumatic Stress Disorder) and sex (male) when he was allegedly terminated from his position after he was unable to work more than 40 hours as stipulated under Respondent's employee guidelines.

2) Whether Respondent failed to accommodate Complainant's disability (Post Traumatic Stress Disorder) by not scheduling him to 8-hour shifts for a 40-hour work week.

## JURISDICTION

Respondent is located at 1901 E Street, S.E. in Washington, D.C. ("District"). Respondent operates a medium-security jail ("Facility") located in the District of Columbia. The Facility employs approximately 410 employees and houses approximately 1,278 male and female inmates. The alleged discriminatory acts occurred in the District while the Complainant was employed by Respondent. Therefore, the OHR has jurisdiction over Respondent and the subject matter of this complaint.

*Nathan Pugh vs. Corrections Corporation of America*
Docket No.: 04-156-P(CN)
EEOC No.: 10CA400138
Page 2 of 10

## FINDINGS OF FACT

The OHR's investigation of this matter included the Complainant's sworn statement, Respondent's position statement and responses to the OHR's request for information, and interviews conducted by the OHR investigator with both Complainant and Respondent. Based on the investigation, the OHR makes the following findings of fact.

Complainant filed this claim against his former employer alleging that he was unlawfully terminated based on his disability and sex (male). Complainant maintains that Respondent failed to give provide him reasonable accommodation as required under the Americans with Disabilities Act (ADA). Moreover, Complainant states that medical accommodations were given to other employees (females) whose respective employment was not terminated.[1]

Respondent contends that the "safety and security of Corrections Corporation of America ("CCA") employees, the inmates, and the general public depend, in large part, on continuous security staffing of all security posts." Respondent further avers that due to the "critical necessity of continuous security staffing" all security personnel are "advised and acknowledge prior to hiring that they must be and are available to work any hours, any shift." Respondent states that this mandate is reflected and indicated in the Collective Bargaining Agreement at Article 14, Section 5, which sets for the "forced drafting procedures" for assigning mandatory overtime. Article 14, Section 5(C) states:

> "*Forced Drafting: Forced drafting will occur when a position has not been filled by a voluntary overtime list. The least senior drafting person will be drafted first according to seniority.*"

Complainant disagrees with Respondent's interpretation of Article 14. Rather, Complainant states a "normal work week" for full-time employees is five workdays consisting of eight hours each. Complainant furthers points to section 5 of Article 14 that reads an employer may be excused from the draft "where extraordinary circumstances exist."

Complainant was hired on March 17, 1997 as a Corrections Officer ("CO") and subsequently promoted to Senior Corrections Officer in 1998.[2] Complainant asserts that Respondent first became aware of Complainant's disability (Post Traumatic Stress Disorder) around September 2001. By memorandum dated September 7, 2001, Complainant requested 40 hours of personal leave and 12.50 (hours) of leave without pay in order to seek medical treatment at a Veteran's facility located in New Jersey.[3] The memorandum was submitted to the Assistant Warden, which was subsequently approved.

---

[1] Complainant's Union Vice President stated that Respondent made accommodations frequently for other employees (females). According to the Union Vice President, an accommodation was made for an employee (female) sometime in 2002 because of her diabetes; an accommodation was made for an employee (female) due to an injured knee sometime in 1999; and an accommodation was granted for another employee (female) when she was pregnant. Respondent denied ever making an accommodation for these employees (female), but stated their Supervisors may have temporarily re-assigned them without going through the formal request process.
[2] Complainant was terminated for insubordination on September 13, 1999, and then rehired on January 10, 2000 as a Corrections Officer.
[3] Complainant was on leave from his employment from September 16, 2001 through October 31, 2001.

*Nathan Pugh vs. Corrections Corporation of America*
Docket No.: 04-156-P(CN)
EEOC No.: 10CA400138
Page 3 of 10

On June 19, 2003, Respondent states that Complainant again took leave under the Family Medical Leave Act ("FMLA") to seek medical treatment (Department of Veterans Affairs Post Traumatic Stress Disorder Residential Rehabilitation Program) for his ongoing medical condition. Complainant sought treatment at the Residential Rehabilitation Program from June 24, 2003 to October 3, 2003. By letter dated September 10, 2003, Respondent sent certified mail to Complainant notifying him that his FMLA leave would expire on October 19, 2003. Respondent states that the "letter also instructed Complainant to provide additional information if he would not be able to return to work before that date."

Complainant returned to work on or about October 2, 2003. Complainant was advised by the Human Resource Manager that he "could not return to work with out a medical release" from his healthcare provider.[4] According to Complainant, an employer must provide an employee with specific written notice if a fitness-for-duty (medical release) certification is required for restoration to employment.[5] Complainant states that under the FMLA, Respondent many not delay restoration to employment until the certification is received where it has fails to provide the required notices.[6]

On October 20, 2003, Respondent received a medical release for Complainant dated September 30, 2003 authorizing Complainant's return to work. The medical release included a restriction that read:

> "It is my medical judgment that maintaining [Complainant's] therapeutic gains and other aspects of his health requires him to work no more than eight (8) hour shift per day. I respectfully request that this reasonable accommodation be afforded him."

On November 5, 2003 Complainant returned to work and was informed that he needed to speak with Respondent's Warden "to discuss the possible accommodations for his restriction." In order to determine the scope of Complainant's restriction, Respondent "sent the Summary of Current Job Performance Characteristics to one of [Complainant's] healthcare providers. The letter went on to request that Complainant's physician provide a determination as to whether [Complainant] can perform the essential functions of the job."[7] The release was returned on or around November 13, 2003 to Respondent with a signed handwritten notation that stated, "pt. can do all his required duties." The notation was written below the stated requirement on Complainant's job description that read "[Complainant] must be available to work any hours, any shift."

According to Respondent, Complainant was advised on or around November 21, 2003 by the Warden that "as an accommodation to his restriction, [Complainant] would be allowed to work overtime on his days off, if necessary, so he would never have to work more than eight hours on

---

[4] Human Resources Manager was informed by Complainant that the medical provider was out of town and would forward the release upon their return. However Human Resources Manager insisted that the release was needed in order to return to work.
[5] Complainant cites 29 C.F.R. 825.301 under the Family Medical Leave Act for authority.
[6] Complainant states that Respondent "failed to provide the required notices and ...refused to restore him to employment upon his return from FMLA leave." Complainant cites 29 C.F.R 825.310 under the Family Medical Leave Act for authority.
[7] The letter requested the medical provider to describe the approximate duration of Complainant's essential functions or restrictions so that they can determine what accommodation is available.

*Nathan Pugh vs. Corrections Corporation of America*
Docket No.: 04-156-P(CN)
EEOC No.: 10CA400138
Page 4 of 10

any given day in accordance" with his restrictions. Respondent states that it relied on the September 20, 2003 and November 19, 2003 medical statements, which suggested a restriction of an eight (8) hour workday. Complainant re-iterated that he could work no more than forty hours a week. Respondent's Warden "then asked Complainant to provide a doctor's statement regarding any additional restrictions on his ability to perform functions of the correctional officer position."[8]

Complainant "disagrees that Respondent asked him to provide another doctor's statement regarding his restriction."[9] Complainant states that Respondent advised him that he would be placed on unpaid medical leave and if he could work overtime, he could return to work. Unless he returned to work by December 5, 2003, he would be terminated when his medical leave ran out.

By letter dated December 23, 2003 to Complainant, Respondent's Warden wrote:

> *We carefully reviewed the job description for Correctional Officer...I have been unable to come up with any modification to the way this particular job function must be performed. As you are aware, all Correctional Officers must be available to work any hours, any shift. It would seem to me that your permanent restrictions cannot be reasonably accommodated in the position of Correctional Officer. In view of the fact that there is no accommodation available that would permit you to perform the essential functions of the job, effective January 30, 2004, we have no choice but to terminate your employment.*"[10]

Respondent received a letter dated March 26, 2004 from the Veteran's Health Administration (Complainant's Physician) stating:

*"[Complainant] is capable of performing his regular duties but it is important that he works no more than an 8 hour shift, no more than 40 hours a week."*

On April 8, 2004 Respondent did provide Complainant with an accommodation "to work in the Commissary." Complainant believes that Respondent "...did so because by that time [Complainant] had filed a grievance against [Respondent] through his union and a charge of discrimination against with the EEOC." Respondent states that it provided the accommodation to Complainant once it received medical documentation that his condition would not allow a work week of more than forty (40) hours. Complainant was offered the position of Commissary Clerk which does not require mandatory overtime and allowed Complainant to retain his pay rate as a Correctional Officer. Complainant accepted the accommodation and returned to work on April 12, 2004.

---

[8] Respondent noted in its Position Statement that "from November 21, 2003 to March 31, 2004, Mr. Pugh provided no additional information to Respondent's Warden or any CTF representative...and refused to respond to repeated written correspondence" requesting medical documentation.
[9] According to Complainant, the Union President contacted Respondent on December 4, 2003 informing it that [Complainant's] condition does not prevent him from working in full duty status as a corrections officer; however, the doctor's treatment of [Complainant] condition does restrict him from working overtime.
[10] Respondent states that Complainant's termination date was extended to February 13, 2004 in order to settle the matter with Complainant. Complainant states that while refusing to accommodate Complainant's disability, Respondent granted a more liberal accommodation to a lesser – qualified female employee.

Case 1:05-cv-02421-JR   Document 13-4   Filed 03/31/2006   Page 6 of 11

*Nathan Pugh vs. Corrections Corporation of America*
Docket No.: 04-156-P(CN)
EEOC No.: 10CA400138
Page 5 of 10

## STANDARD OF REVIEW

In this forum, in order for the Complainant to prevail, the OHR's record must contain credible, probative and substantial evidence from which a reasonable person could conclude that the Complainant met the *prima facie* elements of discriminatory or retaliatory behavior, and that a legitimate, nondiscriminatory explanation for the behavior does not exist (4 DCMR § 715.1; 4 DCMR § 499.1).

## LEGAL ANALYSIS[11]

### A) DISPARATE TREATMENT

The DCHRA makes it unlawful to "...discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age, race, color, religion, sex or national origin," among other protected categories. D.C. Official Code § 2-1402.11(a)(1) (2001 Edition).

In a case brought under the DCHRA for disparate treatment, the same three-part test applicable to Title VII cases applies. *Atlantic Richfield Co. v. District of Columbia Comm'n on Human Rights*, 515 A.2d 1095, 1099 (D.C. 1986). The initial burden is on the employee to prove a *prima facie* case of discrimination by a preponderance of the evidence. *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 (D.C. 1993); *see Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). If the employee satisfies his burden, he raises a rebuttable presumption that the employer's conduct is unlawful discrimination. *Arthur Young*, 631 A.2d at 361.

After this rebuttable presumption is raised, the employer must then articulate "some legitimate, nondiscriminatory reason for the employment action." *Atlantic Richfield*, 515 A.2d at 1099 (citing *Burdine*, 450 U.S. at 254). The employer can "satisfy its burden by producing admissible evidence from which the trier of fact [can] rationally conclude that the employment action [was not] motivated by discriminatory animus." *Atlantic Richfield*, 515 A.2d at 1099-1100. The employer need not persuade the "[trier of fact] that it was usually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254.

If the employer articulates a legitimate, nondiscriminatory reason for the employment action, "the burden shifts back to the employee to prove...that the employer's stated justification for its action 'was not its true reason but was in fact merely a pretext' to disguise discriminatory practice." *Arthur Young*, 631 A.2d at 361 (citation omitted). "This burden merges with the ultimate burden of persuasion on the question of intentional discrimination." *Atlantic Richfield*, 515 A.2d at 1100. "[A]lthough the *McDonnell Douglas* presumption shifts the burden of production to the defendant, 'the ultimate burden of persuading the trier of fact that the defendant

---

[11] Complainant is essentially making two allegations: 1) he alleges that he was subjected to disparate treatment on the bases of his disability and gender when Respondent failed to accommodate his disability in a manner consistent with previous accommodations, 2) he alleges that Respondent outright failed to accommodate his disability. These two issues, while overlapping, warrant separate and specific analyses and therefore will be handled separately.

Case 1:05-cv-02421-JR   Document 13-4   Filed 03/31/2006   Page 7 of 11

*Nathan Pugh vs. Corrections Corporation of America*
Docket No.: 04-156-P(CN)
EEOC No.: 10CA400138
Page 6 of 10

intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Burdine*, 450 U.S. at 253).

Thus, once the employer satisfies its burden of producing a nondiscriminatory reason for its action, the employee must show "both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center*, 509 U.S. at 515 (emphasis in original). It is not enough for the employee simply to show that the employer's proffered reason for the employment action was pre-textual, although that will "often considerably assist him in doing so." *St. Mary's Honor Center*, 509 U.S. at 517; *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). The employee must also prove "that the employer has unlawfully discriminated." *St. Mary's Honor Center*, 509 U.S. at 514. While pretext in the proffered reason for the employment action may, "in appropriate circumstances" justify an "inference" of discrimination, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000), a plaintiff is never relieved of the burden of proving "that the employer has unlawfully discriminated." *St. Mary's Honor Center*, 509 U.S. at 514. In fact, judgment as a matter of law would be appropriate for the employer (i) "…if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision…," or (ii) the plaintiff's factual challenge to the employer's articulated reasons was "weak" and there was "abundant and uncontroverted" independent evidence that no discrimination had occurred. *Reeves* at 148.

Guided by the Supreme Court's analysis in *McDonnell Douglas*, the elements of the *prima facie* case of discrimination on the basis of age are: (1) that Complainant belonged to a protected class; (2) Complainant was qualified and meeting the legitimate expectations of his employer; (3) Complainant suffered an adverse action; and (4) a substantial factor in Respondent's decision to take the adverse action was Complainant's membership in a protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *St. Mary's Honor Center*, 509 U.S. at 506; *Arthur Young*, 631 A.2d at 361.

Under the D. C. Human Rights Act ("DCHRA"), it is illegal to discriminate against an employee based wholly or partly on the employee having a physical handicap. D.C. Official Code § 2-1402.11(a)(1)(2001 Ed.), *American University v. District of Columbia Commission on Human Rights*, 598 A.2d 416, 421 (D.C. 1991). Employment discrimination against persons with disabilities is analyzed under the standard set out in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Miller v. American Coalition of Citizens with Disabilities*, 485 A.2d 186, 189 (D.C. 1984). The Americans with Disabilities Act ("ADA") requires employers to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such [employer] can demonstrate that the accommodation would impose an undue hardship." *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 193 (2001).

A disability is defined as a "physical or mental impairment that substantially limits one or more of the major life activities of an individual having a record of such an impairment or

Case 1:05-cv-02421-JR   Document 13-4   Filed 03/31/2006   Page 8 of 11

*Nathan Pugh vs. Corrections Corporation of America*
Docket No.: 04-156-P(CN)
EEOC No.: 10CA400138
Page 7 of 10

being regarded as having such an impairment." D.C. Official Code § 2-1401-02(5A).[12] A physical impairment is "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine." *Toyota*, 534 U.S. at 195-96. The ADA regulations define mental impairment as "any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(i). The term "impairment" does not include "transitory illnesses which have no permanent effect on the person's health." *Stevens v. Stubbs*, 576 F. Supp. 1409 (D. Ga. 1983). Instead, a disability must be a serious injury or impairment of more than a temporary nature. *Providence Journal Co. v. Mason*, 116 R.I. 614, 359 A.2d. 682 (1976); *Lyons v. Heritage House Restaurants, Inc.*, 432 N.E.2d 270 (Ill. 1982).

A physical or mental impairment "substantially limits" when it considerably limits or limits "major life activities" to a large degree. *Toyota*, 534 U.S. at 196-97. "Major life activities" are those activities that are of central importance to daily life. *Id*. This jurisdiction has defined "major life activities" as functions the average person in the general population can perform with little or no difficulty, including, but not limited to, walking, seeing, hearing, breathing, standing, sitting and working. *Croley v. Republican Nat'l Comm.*, 759 A.2d 682 (D.C. 2000). *Cf. Toyota*, *supra*, 534 U.S. at 200 ("because of the conceptual difficulties inherent in the argument that working is a major life activity, [the Supreme Court has] been hesitant to hold [that working is a major life activity]"). To make the *prima facie* showing, the employee must present evidence as to the nature and severity of the impairment, its duration or expected duration and the permanent or long-term impact. *Toyota*, 534 U.S. at 198.

Complainant must prove that he belongs to the protected class[13] of disability. Complainant alleges that he suffers from Post-Traumatic Stress Disorder. Complainant sought treatment for his condition on multiple occasions, and lasted for nearly four months on one occasion. The OHR finds that Complainant did have a mental impairment that substantially limited him in a major life activity. Specifically, Complainant's condition limited him in the major life activity of working, as Complainant submitted medical documentation supporting the fact that he could not work more than a standard 40-hour week due to his condition. Complainant's treatment was to extend indefinitely. Accordingly, the OHR finds that Complainant belongs to the protected class of disability.

Complainant satisfies the second element of his *prima facie* case, as the OHR is convinced that Complainant was otherwise qualified for the position and performing to the employer's legitimate expectations. However, Complainant fails to satisfy the third element, as he has not proven that he suffered an adverse action. While Respondent served noticed that Complainant's employment *would be* terminated, Complainant's employment was not *actually* terminated, as his termination date was extended in order to reach an agreement regarding his accommodation. Furthermore, Complainant accepted Respondent's accommodation to work as a Commissary

---

[12] This definition is substantially similar to the ADA's definition of disability: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

[13] As a male, Complainant satisfies the first element of his *prima facie* case for gender.

Case 1:05-cv-02421-JR   Document 13-4   Filed 03/31/2006   Page 9 of 11

*Nathan Pugh vs. Corrections Corporation of America*
Docket No.: 04-156-P(CN)
EEOC No.: 10CA400138
Page 8 of 10

Clerk. Complainant's employment was not ultimately terminated, and his *prima facie* case fails as to his allegations of disparate treatment concerning his disability and his gender.

Complainant also would not have satisfied the fourth element of his *prima facie* case. Complainant must prove that his membership in a protected class was a substantial factor in Respondent's decision to take an adverse action against him. Complainant can establish that the protected class was "a substantial factor" in the adverse action taken against him by showing that "similarly situated" employees outside his protected class were treated differently. *McManus v. MCI*, 748 A.2d 949 (D.C. 2000); *Hollins v. Federal National Mortgage*, 760 A.2d 563 (2000*)*. Complainant alleges that numerous female employees were granted accommodations, whereas he was not granted an accommodation. However, Complainant has failed to prove that these employees were similarly situated. While all the employees were females claiming a variety of disabling qualities, there is no evidence that any of them requested an accommodation similar to Complainant's requested accommodation of working no more than a 40-hour work week. Furthermore, there is no evidence that any of the cited female employees were afflicted with a disability to Complainant's that required the type of ongoing care and workplace accommodations that were necessitated by Complainant. Accordingly, Complainant's *prima facie* case on this issue must fail.

## B) FAILURE TO ACCOMODATE

In a "failure to accommodate case," the Plaintiff has the burden of demonstrating that, at the relevant time, he was an otherwise qualified person with a disability,[14] within the meaning of the DCHRA and, with reasonable accommodation, could perform the essential functions of the job. *See, Flemmings* at 861; *Aka* at 1288; *Heasley v D.C. General Hospital*, 180 F. Supp. 2d 158 (D.C.D.C. 2002); *See, Barth* at 1186-87. A *prima facie* case of failure to accommodate requires proof of the following: (1) that the Plaintiff was qualified for the job and, if employed by the Defendant, was meeting the Defendant's legitimate expectations; (2) that the Complainant has a disability under the DCHRA and, with a reasonable accommodation, could perform the essential functions of the job; and (3) that there were facially valid or plausible reasons to believe the disability could be accommodated. *See, Toyota Motor Manufacturing v. Williams*, 534 U.S. 184, 193 (2002); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Strass v. Kaiser Foundation*, 744 A.2d 1000, 1006 (D.C. 2000); *American University v. D.C. Commission on Human Rights*, 598 A.2d 416 (D.C. 1991); *Scarborough v. Natsios*, 190 F. Supp. 2d. 5 (D.C. 2002); *Rhoads v. FDIC*, 257 F.3d 373, 387 n. 11 (4th Cir. 2002)' *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1,6 (2nd Cir. 1999*);* *Prewitt v. United States Postal Service*, 663 F.2d 292 (5th Cir. 1981). Moreover, the Plaintiff must demonstrate that he requested an accommodation, *Evans v. Davis Memorial Goodwill Industries*, 133 F. Supp. 2d 24, 27-28, *aff'd* 2001 U.S. App. LEXIS 28415, described the accommodation sought, *Flemmings* at 861; *Heasley* at 165, and that the Defendant denied the request. *Evans* at 27-28.

Finally, the Plaintiff also must establish that the requested accommodation was reasonable. While a reasonable accommodation may include "job restructuring" and "reassignment to a vacant position," an employer is not required to reallocate "essential functions" of a particular

---

[14] An "otherwise qualified person with a disability" is a person who, with or without a reasonable accommodation, can perform the essential functions of the job. *Toyota* at 193.

*Nathan Pugh vs. Corrections Corporation of America*
Docket No.: 04-156-P(CN)
EEOC No.: 10CA400138
Page 9 of 10

position, nor hire staff to perform the essential functions that the employee cannot perform. *Strass*, 744 A.2d at 1000-1008. Nor is an employer required to make "fundamental or substantial modifications in its operations...*Id.*, (citations omitted)." *Id.* citing *Pesterfield v. Valley Authority*, 941 F.2d 437, 442 (6th Cir. 1991). There is no requirement that the Respondent promote an employee or create a position for the Complainant (citation omitted).

The Defendant bears the burden of refuting the Plaintiff's *prima facie* case although the ultimate burden of proof remains with the Plaintiff. *Flemmings* at 861, relying on *Barth* at 1186-1187. However, a claim of "undue hardship" is an affirmative defense that must be proved by the Defendant. *Flemmings* at 861, relying on *Barth* at 1186-1187. An "undue hardship" defense involves consideration of several factors including "the nature and costs of the proposed accommodation, and the resources and circumstances of the employer in question." *Flemmings* at 861, relying on *Barth* at 1186-1187.

Complainant has satisfied the first element of his *prima facie* case by showing he was qualified for the position and meeting the legitimate expectations of his employer. Complainant, as noted in Section A *supra*, has already proved that he has a disability as defined by the DCHRA. The OHR is further satisfied that Complainant can perform the essential functions of the job. Complainant had no problem performing the required functions of the position; rather, he only needed to limit the amount of time spent on the job by working only 40-hour weeks. Complainant satisfied the final element by proving that there are facially valid reasons that his disability could be accommodated; basically, he merely had to be scheduled for 8-hour shifts to accommodate a 40-hour work week. The OHR finds that Complainant requested this accommodation and provided the necessary documentation to Respondent.

However, Respondent offered an accommodation once it received the necessary medical documentation from Complainant. Although there appears to be some disagreement as to when this documentation was provided to Respondent, there is no dispute that Respondent offered an accommodation on April 8, 2004 to work as a Commissary Clerk, and that Complainant accepted that offer. Accordingly, the OHR cannot find probable cause in a failure to accommodate claim if the Complainant has ultimately been accommodated to his satisfaction.

## NO CAUSE FINDING

For the foregoing reasons, the OHR finds:

1) **NO PROBABLE CAUSE** that Respondent subjected Complainant to disparate treatment on the bases of his disability (Post Traumatic Stress Disorder) and sex (male) when he was allegedly terminated from his position after he was unable to work more than 40 hours as stipulated under Respondent's employee guidelines.

2) **NO PROBABLE CAUSE** that Respondent failed to accommodate Complainant's disability (Post Traumatic Stress Disorder) by not scheduling him to 8-hour shifts for a 40-hour work week.

**IT IS SO ORDERED.**

Case 1:05-cv-02421-JR    Document 13-4    Filed 03/31/2006    Page 11 of 11

*Nathan Pugh vs. Corrections Corporation of America*
Docket No.: 04-156-P(CN)
EEOC No.: 10CA400138
Page 10 of 10

**RIGHT TO APPLY FOR RECONSIDERATION**

Complainant may apply for reconsideration of the No Probable Cause determination pursuant to 4 DCMR § 719. The application, along with all supporting documentation, must be submitted in writing to the Director of the Office of Human Rights within thirty (30) calendar days from the following date: _March 4, 2005_.

Complainant may apply for reconsideration on the grounds of newly discovered evidence, misapplication of laws, or misstatement of material facts. The request must be based on one or more of these grounds. Newly discovered evidence is evidence that: (a) is competent, relevant, and material; (b) was not reasonably discoverable before the issuance of this Letter of Determination; and (c) would alter the ultimate outcome in this case. The application for reconsideration may be dismissed if the application: (a) is not based on one of the above grounds; or (b) is not timely filed. **COMPLAINANT MUST INCLUDE ALL SUPPORTING DOCUMENTATION AND REASONS FOR THE RECONSIDERATION REQUEST IN THE ORIGINAL APPLICATION FOR RECONSIDERATION.** The OHR may forward a copy of any application for reconsideration, along with all supporting documentation, to the other party for response.

If Complainant does not file a request for reconsideration, Complainant has three years from receipt of this Letter of Determination to file a petition for review with the District of Columbia Superior Court.

**RIGHT TO SUBSTANTIAL WEIGHT REVIEW**

As a Complainant you have the right to a "Substantial Weight Review" from the U.S. Equal Employment Opportunity Commission (EEOC). To obtain a Substantial Weight Review, you must, within fifteen (15) calendar days, write to: State and Local Coordinator, EEOC, 1801 L Street, N.W., Suite 100, Washington, D.C. 20507-1002.

Sincerely,

Kenneth L. Saunders
Director


Cc:   Susan Lindsey
      Assistant General Counsel
      Labor & Employment
      Corrections Corporation of America
      10 Burton Hills Blvd.
      Nashville, TN 37215